UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SHELBY BAILEY | CIVIL ACTION |
| VERSUS | NO. 18-5888 |
| BOARD OF COMMISSIONERS OF THE LOUISIANA STADIUM AND EXPOSITION DISTRICT ET AL. | SECTION "G"(2) |

## ORDER ON MOTION

Plaintiff Shelby Bailey brought this lawsuit pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., based on alleged sightline obstructions from Bailey's wheelchair-accessible season ticket seats at the Mercedes-Benz Superdome. Record Doc. No. 1. Defendants' Motion to Quash Deposition or, in the Alternative, for Protective Order, Record Doc. No. 74, is before me. Plaintiff filed a timely opposition memorandum. Record Doc. No. 77. Defendants received leave to file a reply. Record Doc. Nos. 78, 80, 81. Defendants' motion seeks to quash the notice of deposition issued to Kevin McGuire or, alternatively, issuance of a protective order and/or modification of the notice of deposition to prohibit discovery of facts and opinions McGuire gleaned from his tenure as ADA consulting expert to defendants Board of Commissioners of the Louisiana Stadium and Exposition District ("LSED") and non-defendant New Orleans Saints ("Saints"). For the following reasons, the motion is GRANTED IN PART AND DENIED IN PART.

I.  LEGAL STANDARD

Subpoenas served on third parties to litigation "'are discovery devices which, although governed in the first instance by Rule 45, are also subject to the parameters established by Rule 26.'" Garvin v. S. States Ins. Exchg. Co., 2007 WL 2463282, at *5 n.3 (N.D. W. Va. Aug. 28, 2007) (quoting In re Application of Time, Inc., 1999 WL 804090, at *7 (E.D. La. Oct. 6, 1999), aff'd, 209 F.3d 719, 2000 WL 283199 (5th Cir. 2000)); see Nicholas v. Wyndham Int'l, Inc., 2003 WL 23198847, at *1–2 (D.V.I. Oct. 1, 2003) (the "clear majority position [is] that use of Rule 45 subpoenas constitutes discovery"); Mortg. Info. Servs. v. Kitchens, 210 F.R.D. 562, 566–67 (W.D.N.C. 2002) ("a Rule 45 subpoena does in fact constitute discovery"). The court has authority, even acting on its own, either to quash or to modify a subpoena that exceeds the strictures of either Rule. Fed. R. Civ. P. 26(b)(2)(c) and (c)(1)(A) and (D) and 45(d)(3). A court must quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to an undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iii) and (iv).

Fed. R. Civ. P. 26(c)(1) governs motions for protective orders. The Rule provides in pertinent part:

> A party or any person from whom discovery is sought may move for a protective order . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . specifying terms, . . . for the . . . discovery."

The requirement "of a showing of good cause to support the issuance of a protective order indicates that '[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from

stereotyped and conclusory statements.'" In re Terra Int'l, Inc., 134 F.3d 302, 306 (5th Cir. 1998) (quoting United States v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)); see also United States v. Talco Contractors, Inc., 153 F.R.D. 501, 513 (W.D.N.Y. 1994) ("Good cause must be established and not merely alleged.").

"A party may depose any person who has been identified as an expert whose opinions may be presented at trial." Fed. R. Civ. P. 26(b)(4)(A). However, in the case of non-testifying consulting experts, such as McGuire,

> [o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial. But a party may do so only: (i) as provided in Rule 35(b); or (ii) on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means.

Fed. R. Civ. P. 26(b)(4)(D). A party seeking to show exceptional circumstances under Rule 26(b)(4)(D) carries a heavy burden Bromeland v. Posthumus, 2009 WL 10700074, at *1 (W.D. Tex. Jan. 29, 2009) (citing Hoover v. United States Dep't of the Interior, 611 F.2d 1132, 1142 n.13 (5th Cir.1980)).[1]

The Advisory Committee Notes to the Federal Rules of Civil Procedure make clear that Rule 26(b)(4) "does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit." Advisory

---

[1] Both of these cases erroneously refer to Fed. R. Civ. P. 26(b)(4)(B) in their analyses of Fed. R. Civ. P. 26(b)(4)(D).

Committee Notes to 1970 Amendment to Fed. R. Civ. P. 26 (quoted in Federal Civil Judicial Procedure and Rules at p. 138, Thomson Reuters 2019 rev. ed.). According to the official Notes, "[s]uch an expert should be treated as an ordinary witness." Id.

In a medical product liability lawsuit, Judge Milazzo of this court previously analyzed Rule 26(b)(4)(D)'s application to a discovery dispute over whether doctors who were designated by plaintiffs as non-testifying consulting experts were required to produce medical records to defendants when those doctors had also met with plaintiffs personally and performed medical examinations on them. In re Taxotere (Docetaxel) Prod. Liab. Litig., 2018 WL 5669019, at *4 (E.D. La. Nov. 1, 2018). The court held that Rule 26(b)(4)(D) requires courts to distinguish between a "percipient witness who happens to be an expert" and "an expert who without prior knowledge of the facts giving rise to litigation is recruited to provide opinion testimony." In re Taxotere, 2018 WL 5669019, at *3. The court held that non-testifying consulting experts are ordinary fact witnesses to the extent that they "acquire[] their information through percipient observations" of the events at issue in the case or become actors in the factual narrative of the case:

> A person is not a consulting expert if he is "an actor with regard to the occurrences from which the tapestry of the lawsuit was woven," whose opinion . . . is premised on personal knowledge and observations . . . . An expert whose opinion testimony "arises not from his enlistment as an expert but, rather, from his ground-level involvement in the events giving rise to the litigation" is not a consulting expert.

In re Taxotere, 2018 WL 5669019, at *3–4 (quoting Downey v. Bob's Disc. Furniture Holdings, Inc., 633 F.3d 1, 6 (1st Cir. 2011).

II. ANALYSIS

Much like In re Taxotere, the parties' central dispute is whether McGuire should be deemed a non-testifying consulting expert, an ordinary fact witness or some hybrid of the two. Defendants' initial disclosures identify McGuire as a person who "may have information relevant to the design and configuration of seating within the Louisiana Superdome, as well as factual information on Defendants' compliance efforts to date with respect to accessible seating." Record Doc. No. 77-2 at p. 2. However, defendants have not designated McGuire as a testifying expert as of the submission date of this motion.

An affidavit sworn by Larry M. Roedel, former general counsel for LSED, states that McGuire was hired by LSED as an ADA consultant "for advice on ADA Compliance Issues, working with decision-makers from both the LSED, SMG, and New Orleans Saints in the process." Record Doc. No. 74-3 at p. 4. Defendants' memorandum further explains that McGuire "assisted with various ADA related issues, including discussions and negotiations with the Department of Justice, and discussions regarding ADA complaints (including complaints by Mr. Bailey's family regarding the location of his seats)." Record Doc. No. 74-1 at pp. 1–3.

McGuire ended his employment with LSED in December 2013 and subsequently was hired as ADA coordinator for the New Orleans Saints ("the Saints") for an unspecified time period. Id. at p. 2. Bailey attests in a statement made under penalty of perjury, 28 U.S.C. § 1746, that McGuire contacted him and his family at the Saints' direction after McGuire reviewed their complaints of obstructed sightlines in Bailey's wheelchair-accessible

Superdome seats. Record Doc. No. 77-1. Bailey states that McGuire told him his complaints were "legitimate" and opined that recent stadium renovations had resulted in the obstructed sightlines. Id. Bailey explains that McGuire assisted Saints staff in moving Bailey to several different stadium sections to ascertain which wheelchair-accessible seats had the least obstructed views. Id.

The motion papers indicate that McGuire had two <u>distinct</u> jobs during his tenures with LSED and the Saints. First, McGuire was an ADA consultant throughout his employment with LSED, advising on ADA-related issues to LSED and the Saints. After terminating his consulting position with LSED, McGuire worked as an ADA coordinator for the Saints, engaging directly with disabled Superdome patrons in efforts to remedy their complaints concerning accessibility in the stadium.

Under the foregoing circumstances, defendants' motion is granted in part in that plaintiff may not depose McGuire to discover facts known or opinions held in regard to McGuire's work as ADA consultant for LSED and/or the Saints. In his capacity as ADA consultant, McGuire's exclusive role was to advise and negotiate on ADA-related issues in connection with the Department of Justice's compliance investigation and individual ADA complaints from Superdome patrons. His consulting work was performed under the constant and palpable threat of ADA litigation from the government and/or individual plaintiffs. The motion papers demonstrate that LSED and the Saints <u>jointly</u> consulted with McGuire as to the ADA compliance issues surrounding the threatened litigation. Thus, any facts known or opinions held by McGuire arising from his consulting work for either LSED or the Saints are

protected from discovery absent a showing of exceptional circumstances. Plaintiff's opposition memorandum makes no effort whatsoever to carry the heavy burden of showing the impracticality of obtaining facts and expert opinions on ADA compliance at the Superdome by means other than McGuire's deposition. Moreover, plaintiff is free to employ or retain his own consulting expert(s) for the purpose of gathering this information.

Plaintiff argues that defendants waived the discovery protections afforded to non-testifying consulting experts under Rule 26(b)(4)(D) in allowing McGuire to communicate directly with plaintiff and other disabled Superdome patrons as the Saints' ADA coordinator. Record Doc. No. 77 at p. 10. However, plaintiff's argument inappropriately conflates the two <u>distinct</u> positions held by McGuire during his tenures with LSED and the Saints, and exclusively cites communications and disclosures McGuire made to plaintiff and others in his capacity as the Saints' ADA coordinator, a position he held after he left his consulting position with LSED. McGuire's personal interactions with plaintiff and other disabled patrons in fielding their accessibility complaints at the Superdome are entirely separate from the protected facts and opinions McGuire gleaned as an ADA consultant. Accordingly, plaintiff's argument that defendants waived Rule 26(b)(4)(D)'s discovery protections as to McGuire is without merit.

Defendants' motion is denied in part in that plaintiff may depose McGuire as to his personal observations, interactions and communications with Bailey and his family as the Saints' ADA coordinator. Based on the facts stated in plaintiff's declaration, McGuire personally interacted with plaintiff and his family in his capacity as the Saints' ADA

coordinator in responding to plaintiff's complaints about obstructed views from his wheelchair-accessible Superdome seats. The allegations in these complaints form the very basis of this ADA lawsuit. To this end, McGuire's personal knowledge and observations arise not from his capacity as a non-testifying consulting expert in anticipation of litigation, but rather from his own "percipient observations" and "ground-level involvement in the events giving rise to this litigation." In re Taxotere, 2018 WL 5669019, at *3–4. Therefore, McGuire's personal observations, interactions and communications with plaintiff and his family as the Saints' ADA coordinator are not subject to protection from discovery under Fed. R. Civ. P. 26(b)(4)(D).

Accordingly, the following protective order is entered to provide that the scope of Kevin McGuire's deposition is hereby LIMITED as follows. IT IS ORDERED that plaintiff's counsel may not depose McGuire about facts known or opinions held arising from McGuire's work as ADA consultant for LSED and/or the Saints. The scope of McGuire's deposition is hereby LIMITED to McGuire's personal observations, interactions and communications with plaintiff and his family in his capacity as the Saints' ADA coordinator. Pursuant to Fed. R. Civ. P. 30(c)(2), McGuire may be instructed not to answer deposition questions when necessary to enforce the limitation set out in this order and to preserve the discovery protection afforded to non-testifying consulting experts under Fed. R. Civ. P. 26(b)(4)(D).

IT IS FURTHER ORDERED that no later than NOVEMBER 6, 2019, counsel must confer in person or by telephone and in good faith and consultation with the witness to arrive

upon a mutually convenient date, time and location within a reasonable distance from McGuire's residence in Boston, Massachusetts, when he will be deposed either in person, by telephone or other remote means. Fed. R. Civ. P. 30(b)(4). To the extent that travel to Boston imposes burden or expense, counsel may participate in the deposition by telephone or other remote means. The deposition must be scheduled as soon as practicable, and no later than NOVEMBER 1, 2019, counsel must provide me with a letter, which I will file in the record, memorializing the arrangements they have made. Trial is not scheduled to commence in this case until March 2, 2020, so that the existing schedule should accommodate any logistical difficulties the parties might encounter.

New Orleans, Louisiana, this __23rd__ day of October, 2019.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE