# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHELBY BAILEY** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 18-5888** |
| **BOARD OF COMMISSIONERS OF THE LOUISIANA STADIUM AND EXPOSITION DISTRICT, ET AL.** | **SECTION: "G"(2)** |

## ORDER AND REASONS

Pending before the Court is Defendant SMG's "Motion for Judgment on the Pleadings or alternatively for Summary Judgment."[1] Plaintiff Shelby Bailey ("Plaintiff") filed a complaint alleging that the owners and operators of the Mercedes-Benz Superdome (the "Superdome"), failed to provide him with handicap accessible seating during New Orleans Saints (the "Saints") football games.[2] In the instant motion, SMG argues that all of Plaintiff's claims against SMG should be dismissed because the claims raised are time-barred or not ripe for judicial review.[3] Considering SMG's motion, the memorandum in support and opposition, and the record, the Court grants the motion in part and denies it in part.

## I. Background

On June 14, 2018, Plaintiff filed a Complaint in this Court naming as defendants SMG as the operator of the Superdome, the Board of Commissioners of the Louisiana Stadium and Exposition District (the "Board") as the owner of the Superdome, and Kyle France ("France") in his official capacity as chairman of the Board (collectively, "Defendants").[4] Plaintiff brings claims

---

[1] Rec. Doc. 31.

[2] Rec. Doc. 1.

[3] Rec. Doc. 31.

[4] Rec. Doc. 1.

against the Board and France for declaratory and injunctive relief pursuant to Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act, 29 U.S.C. §794, *et seq.*[5] Plaintiff brings claims against SMG for declaratory and injunctive relief pursuant to Title III of the ADA.[6] Plaintiff also seeks recovery of attorneys' fees and costs.[7]

According to the Complaint, Plaintiff has a disability and relies on an electric wheelchair for mobility.[8] Plaintiff alleges that he has been a Saints season ticket holder for over 30 years.[9] Plaintiff alleges that prior to 2011, his seat was located on a wheelchair accessible raised platform in the 100-level section of the Superdome.[10] Plaintiff alleges that in 2011, Defendants began extensive renovations on the Superdome and reconfigured the accessible seating section for patrons with disabilities.[11] Plaintiff alleges that as a result of the renovations, the wheelchair accessible seating at the Superdome was moved to other positions where the views are obstructed by barriers and other patrons or players standing during the game, or the seating is not fully accessible by wheelchair.[12]

Plaintiff alleges that Defendants have been on notice of ongoing accessibility issues for many years.[13] According to the Complaint, in 2008 the United States Department of Justice

---

[5] *Id.* at 1–2.

[6] *Id.* at 2.

[7] *Id.*

[8] *Id.* at 4.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* at 4–8.

[13] *Id.* at 10.

conducted an inspection of the Superdome and issued a report detailing violations of ADA regulations.[14] Additionally, Plaintiff alleges that Defendants were sued by private litigants in 2018 regarding ongoing accessibility violations.[15]

As a result, Plaintiff alleges that Defendants have failed to comply with various parts of the ADA and Rehabilitation Act.[16] Plaintiff seeks compensatory and nominal damages along with declaratory and injunctive relief, and attorneys' fees.[17]

SMG filed the instant motion on March 14, 2019.[18] Plaintiff filed an opposition on April 2, 2019.[19] SMG, with leave of Court, filed a reply in further support of the motion on April 22, 2019.[20] Plaintiff, with leave of Court, filed a sur-reply in further opposition to the motion on May 23, 2019.[21]

## II. Parties' Arguments

### A.   SMG's Arguments in Support of the Motion

In the instant motion, SMG argues that all of Plaintiff's claims against SMG should be dismissed because the claims raised are time-barred or not ripe for judicial review.[22] First, SMG argues that it cannot be held liable because it is "not in charge of ticketing or programming for

---

[14] Id.

[15] Id. at 10–11.

[16] Id. at 11–29.

[17] Id. at 1.

[18] Rec. Doc. 31.

[19] Rec. Doc. 33.

[20] Rec. Doc. 36.

[21] Rec. Doc. 46.

[22] Rec. Doc. 31.

Saints games."[23] Second, SMG argues that the claims are time-barred because they were not filed within one year of the date that Plaintiff's claims accrued.[24] Third, SMG asserts that the claims regarding future renovations are not ripe for judicial review because the threshold issue of justiciability does not allow Plaintiff to seek an order directing that any future renovations comply with the ADA.[25]

First, SMG argues that it cannot be held liable because it is "not in charge of ticketing or programming for Saints games."[26] SMG contends that its relationship with the Saints is contractual in nature and is governed in relevant part by a contract titled "Second Amended and Restated Stadium Agreement New Orleans Saints, L.L.C." (the "Stadium Agreement").[27] According to SMG, Section 7.2 of the Stadium Agreement provides in part that "[d]istribution and sale of tickets for admission to Home Games shall be under the sole direction and control of the [Saints]. . . ."[28] Therefore, SMG contends that it cannot be held liable because it is not responsible for ticketing or other programming that occurs during Saints football games.[29]

Second, SMG argues that Plaintiff's claims are time-barred.[30] SMG asserts that Plaintiff was originally aware of alleged problems related to accessibility when renovations to the

---

[23] Rec. Doc. 31-1 at 5.

[24] *Id.* at 1.

[25] *Id.*

[26] *Id.* at 5.

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.* at 4, 8.

Superdome were made in 2011, as Plaintiff alleged in the Complaint.[31] Further, SMG argues that Plaintiff voiced complaints to Defendants over three years ago.[32] SMG also argues that the only significant renovation to the Superdome since 2011 was the installation of new video screens in 2016, two years before this lawsuit was filed.[33] SMG contends that Plaintiff's claims accrued when he became aware of the accessibility issues in 2011 and 2016 respectively.[34] According to SMG, because the ADA does not establish a limitations period, courts borrow the most analogous limitations period from state law.[35] SMG argues that the analogous limitations period under Louisiana law is the one-year prescriptive period for tort claims under Louisiana Civil Code article 3492.[36] Thus, SMG argues that the Complaint is untimely as it was filed on June 14, 2018, approximately seven years after the original renovations referenced in the Complaint and two years after the most recent renovations.[37]

Third, SMG asserts that the claims regarding future renovations are not ripe for judicial review because the threshold issue of justiciability does not allow Plaintiff to seek an order directing that any future renovations comply with the ADA.[38] SMG argues that Plaintiff's request "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at

---

[31] *Id.* at 4.

[32] *Id.*

[33] *Id.*

[34] *Id.* at 9.

[35] *Id.* at 8 (citing *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011); *Owens v. Okure*, 488 U.S. 235, 241 (1989)).

[36] *Id.*

[37] *Id.* at 8–10.

[38] *Id.* at 1, 11.

all."[39] SMG argues that any future renovations to the Superdome are speculative at this point and there is no indication that future renovations would violate the ADA.[40] Further, SMG contends that any threat of harm is not immediate because Defendants "have not made or approved any plans, and there is no indication whatsoever that Plaintiff will be adversely affected by any future renovations."[41] Ultimately, SMG argues that there is no case or controversy in front of the Court at this time and Plaintiff is asking the Court to issue an advisory opinion.[42] Accordingly, SMG asserts that this claim should be dismissed for lack of subject matter jurisdiction.[43]

Finally, SMG argues that it should be awarded attorneys' fees in this case because Plaintiff's claims based on past renovations are "clearly prescribed" and any claim premised on a future renovation is "clearly speculative."[44] Accordingly, SMG asserts that the claims against it "are, from an objective standpoint, frivolous, groundless, and unreasonable, and SMG is entitled to an award of attorneys' fee."[45]

### B.       *Plaintiff's Arguments in Opposition to the Motion*

In opposition to the motion, Plaintiff argues that: (1) SMG can be held liable as an operator of the Superdome; (2) the claims are not time-barred because the statute of limitations begins to

---

[39] *Id.* at 11 (citing *United States v. Carmichael*, 343 F.3d 756, 761 (5th Cir. 2003) (internal quotations omitted); *Arc of VA, Inc. v. Kaine*, Civil No. 3:09cv686, 2009 WL 4884533, at *4 (E.D. Va. Dec. 17, 2009)).

[40] *Id.* at 14.

[41] *Id.* at 15.

[42] *Id.* at 16.

[43] *Id.*

[44] *Id.*

[45] *Id.* at 18.

run anew each time Plaintiff experiences discrimination based on his disability; and (3) anticipation of future injury is actionable under the ADA.[46]

First, Plaintiff contends that SMG can be held liable as an operator of the Superdome.[47] Plaintiff asserts that Title III of the ADA applies to "any person who owns, leases (or leases to), or operates a place of public accommodation."[48] Plaintiff argues that the Fifth Circuit has stated to "operate," in the context of a business operation, means "to put or keep in operation," "to control or direct the functioning of," or "to conduct the affairs of; manage."[49] Plaintiff argues that SMG manages the Superdome as evidenced by its contract with the Saints, which refers to SMG as "the Manager" and states that it "shall provide all services to manage and operate the Superdome in a first-class, businesslike and efficient manner substantially consistent with the operation and management of other NFL stadiums."[50] Further, Plaintiff notes that under the contract SMG is obligated to "maintain the physical structure of the Superdome and all features, fixtures, equipment and improvements therein [and] cause the seating arrangement the Superdome to be placed in the standard football configuration."[51] Therefore, Plaintiff asserts that "[t]here can be no doubt that SMG controls modification of the Superdome and could cause said place of public accommodation to comply with the ADA."[52]

---

[46] Rec. Doc. 33.

[47] *Id.* at 6.

[48] *Id.*

[49] *Id.* (citing *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1066 (5th Cir. 1995) (internal citations omitted))).

[50] *Id.* at 7 (citing Rec. Doc. 31-5 at 24).

[51] *Id.* (citing Rec. Doc. 31-5 at 24).

[52] *Id.*

Second, Plaintiff argues that his claims are not time-barred because he was denied the "full and equal enjoyment" of the services, facilities, privileges, and accommodations offered at the Superdome multiple times during the year leading up to this lawsuit.[53] Plaintiff argues that in the one year prior to filing this suit, he attended nine Saints games where he was unable to fully see the field or scoreboard.[54] Plaintiff contends that while the Fifth Circuit has not ruled on this issue, other Circuits have held that claims under Title III of the ADA continue to accrue until the offending activity ceases.[55]

Third, Plaintiff asserts that he "has standing to sue to remove the existing barriers as an individual who is 'being subject to discrimination on the basis of disability,'" and he "has standing to sue to ensure that future modifications of the Superdome are made in accordance with the requirements of the ADA because he is someone who has 'reasonable grounds for believing' that he is 'about to be subjected to discrimination.'"[56] Additionally, Plaintiff argues that his claims are ripe for judicial review because he is alleging that the ADA violations are ongoing.[57] Plaintiff argues that he is justified in speculating that future renovations will not adhere to the requirements of the ADA based on the past renovations conducted by SMG.[58]

---

[53] *Id.* at 9–10.

[54] *Id.* at 12.

[55] *Id.* at 13–14 (citing *Pickern v. Holiday Quality Foods, Inc*., 293 F.3d 1133, 1137 (9th Cir. 2002); *Scherr v. Marriott International, Incorporated*, 703 F.3d 1069, 1075–76 (7th Cir. 2013) ("Because the violations Scherr alleges are continuing, the applicable statute of limitations does not bar her claim.")).

[56] *Id.* at 17–18 (quoting 42 U.S.C. §12188(a)(1)).

[57] *Id.* at 19.

[58] *Id.* at 20–21.

Finally, even if the Court were to rule in SMG's favor, Plaintiff argues that SMG is not entitled to attorneys' fees because he has presented a good-faith argument that SMG is an operator of the Superdome and that his claims are timely as an ongoing violation of the ADA.[59]

## C. SMG's Arguments in Further Support of the Motion

In reply, SMG argues that it is not the proper defendant in this case, as the Saints organization has exclusive control of the Superdome and ticketing during Saints games.[60] SMG asserts that the Saints control where Plaintiff sits during games and therefore Plaintiff brings a "program-accessibility" claim that is better suited against the Saints.[61]

Next, SMG contends that Plaintiff's claims are not based on a continued failure to accommodate him each time he attended a Saints game, but that his claims are based on the renovations of the Superdome and the relocation of his season tickets.[62] SMG argues that Plaintiff's claims are time-barred because he had knowledge of these renovations more than one year before filing the instant case.[63] SMG argues that "the out-of-circuit cases cited by Plaintiff are not binding on this Court, and they conflict with the binding holding [by the Fifth Circuit] in *Frame* that a cause of action accrues when a plaintiff *first* knows or has reason to know the basis for his or her discrimination claim."[64] Additionally, SMG contends that the decisions cited by Plaintiff are distinguishable because they concern removal of architectural barriers rather than

---

[59] *Id.* at 23–24.

[60] Rec. Doc. 36 at 2.

[61] *Id.* at 2–3.

[62] *Id.* at 1.

[63] *Id.* at 1, 4.

[64] *Id.* at 6 (citing *Frame*, 657 F.3d at 240).

allegedly discriminatory renovations.[65] Therefore, SMG asserts that the cause of action arose when Plaintiff became aware of the renovations, more than one year before filing the instant case.[66] SMG also argues that the claim is barred by the equitable defense of laches because Plaintiff waited an "inexcusable period of time" before asserting his claims and, in doing so, prejudiced SMG's ability to address these issues when previous renovations were ongoing.[67]

SMG also argues that Plaintiff's claims based on future renovations are not ripe for judicial review as these claims rest upon contingent events that might not occur.[68] SMG argues that Plaintiff presents no authority to support the position that a "past pattern of alleged failures in designing the Superdome support[s] finding that the future renovations will be unsatisfactory."[69] SMG argues that plans for future renovations have not been made at this point, and are not imminent, thus the claim should be dismissed.[70] Finally, SMG argues that Plaintiff's claims against SMG are time-barred and frivolous, and SMG should be awarded attorneys' fees.[71]

### D.   *Plaintiff's Arguments in Further Opposition to the Motion*

On May 23, 2019, with leave of Court, Plaintiff filed a sur-reply brief to alert the Court of the Tenth Circuit's recent decision in *Stephen Hamer v. City of Trinidad*, which Plaintiff asserts is instructive with respect to the issues presented in SMG's motion.[72]

---

[65] *Id.* at 7 (citing *Pickern*, 293 F.3d at 1133; *Scherr*, 703 F.3d at 1069).

[66] *Id.* at 5.

[67] *Id.* at 7.

[68] *Id.* at 7–8 (citing *United States v. Carmichael*, 343 F.3d 756, 761 (5th Cir. 2003)).

[69] *Id.* at 8.

[70] *Id.* at 8–9.

[71] *Id.* at 9–10 (citing *Hoover v. Armco, Inc.*, 915 F.2d 355, 357 (8th Cir. 1990)).

[72] Rec. Doc. 46 at 1.

## III. Legal Standard

### A.  *Legal Standard on Motion for Judgment on the Pleadings under Rule 12(c)*

A motion for judgment on the pleadings under Rule 12(c) is treated in the same manner as a Rule 12(b)(6) motion to dismiss.[73] "The central issue is whether in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[74] The "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[75] To survive a Rule 12(b)(6) or Rule 12(c) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[76] "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[77]

If, on a motion under Rule 12(b)(6) or Rule 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion should be treated as one for summary judgment under Rule 56 and all parties must be given an opportunity to present all the material that is pertinent to the motion.[78] Nevertheless, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint

---

[73] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citing *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313, n.8 (5th Cir. 2002)).

[74] *Id.* (internal quotation marks and citations omitted).

[75] *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir.2004) (quoting *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999)).

[76] *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

[77] *Id.* at 555 (internal quotation marks, citations, and footnote omitted).

[78] Fed. R. Civ. P. 12(d).

and are central to [his] claim."[79]

Here, the document attached to the instant motion, the Stadium Agreement, is referenced by Plaintiff in the complaint and is central to Plaintiff's claim regarding who qualifies as an operator of the Superdome.[80] Therefore, the Court will analyze whether to dismiss Plaintiff's claims under the Rule 12(c) standard.

## B.    *ADA Compliance*

The Americans with Disabilities Act of 1990 ("ADA") "is a broad mandate of comprehensive character and sweeping purpose intended to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life."[81] "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)."[82]

Title III, the provision at issue in the instant motion, provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."[83] A stadium is considered to be a place of public accommodation under Title

---

[79] *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

[80] *See* Rec. Doc. 31-5; *see also* Rec. Doc. 1 at 3.

[81] *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (en banc) (citing *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001); *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 599 (1999) (internal quotation marks omitted)).

[82] *PGA Tour*, 532 U.S. at 675.

[83] 42 U.S.C. § 12182(a).

III.[84] Title III defines discrimination as including "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable."[85]

The United States Attorney General is authorized to promulgate regulations implementing Title III.[86] Public accommodations must comply with both the Title III regulations set forth at 28 C.F.R. part 36, subpart D and the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG") set forth at 36 C.F.R. part 1191, appendices B and D. Pursuant to the regulations, "[a]ny alteration to a place of public accommodation . . . after January 26, 1992, shall be made so as to ensure that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs."[87] An alteration is defined as "a change to the place of public accommodation or a commercial facility that affects or could affect the usability of the building or facility or any part thereof."[88] "The ADA does not require a place of public accommodation to provide a plaintiff with the ideal or preferred accommodation; rather, the ADA requires that a defendant provide a plaintiff with an accommodation that is reasonable and permits the plaintiff to participate equally in the good, service, or benefit offered."[89]

## IV. Analysis

SMG argues that all claims pending against it should be dismissed because: (1) SMG cannot be held liable as the operator of the Superdome; (2) Plaintiff's claims are time-barred; and

---

[84] 42 U.S.C. § 12182(b)(2)(A)(iv).

[85] 42 U.S.C. § 12181(7)(C).

[86] 42 U.S.C. § 12186(b).

[87] 28 C.F.R. § 36.402(a)(1).

[88] 28 C.F.R. § 36.402(b).

[89] 1 Americans with Disab. Pract. & Compliance Manual § 4:1, Nondiscrimination Mandate.

(3) anticipation of future injury is not actionable under the ADA. SMG also argues Plaintiff is liable for attorneys' fees. The Court will examine each of these issues presented by the motion in turn.

### A.    *Whether SMG Can be Held Liable as the Operator of the Superdome*

SMG argues that it cannot be held liable as an operator of the Superdome as it is "not in charge of ticketing or programming for Saints games."[90] Plaintiff argues that SMG manages the Superdome as evidenced by its contract with the Saints, which refers to SMG as "the Manager" and provides that SMG shall manage and maintain the "physical structure" of the Superdome consistent with the operation of other NFL stadiums.[91]

Title III of the ADA applies to "any person who owns, leases (or leases to), or operates a place of public accommodation."[92] In an action under Title III of the ADA the Fifth Circuit explained that "[b]ecause the ADA does not define the term 'operates,' we 'construe it in accord with its ordinary and natural meaning.'"[93] The Fifth Circuit found that the term "operate" means "to put or keep in operation," "[t]o control or direct the functioning of," or "[t]o conduct the affairs of; manage."[94] The Fifth Circuit has held that the relevant question is whether the defendant controls the modification of the public accommodation such that the defendant could cause the accommodation to comply with the ADA.[95]

---

[90] Rec. Doc. 31-1 at 5.

[91] Rec. Doc. 33 at 7 (citing Rec. Doc. 31-5 at 24).

[92] *See* 42 U.S.C. Section 12182(a)

[93] *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063, 1066 (5th Cir. 1995) (quoting *Smith v. United States*, 508 U.S. 223 (1993); *Perrin v. United States*, 444 U.S. 37, 42 (1979)).

[94] *Id.* (internal citations omitted).

[95] *Id.* at 1067; *see also Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 878 (9th Cir. 2004) ("whether Title III applies…depends on whether those private entities exercise sufficient control over the Center, and

In the Complaint, Plaintiff alleges that "SMG operates some or all of the programs, services, accommodations which are offered at the Superdome" and "SMG is responsible for any violations of Title III of the ADA at the Property."[96] The Stadium Agreement states that SMG "shall provide all services to manage and operate the Superdome in a first-class, businesslike and efficient manner substantially consistent with the operation and management of other NFL stadiums."[97] Further, SMG is obligated to "maintain the physical structure of the Superdome and all features, fixtures, equipment and improvements therein, including but not limited to . . . spectator and other seating. . . ."[98] Additionally, SMG is responsible for "caus[ing] the seating arrangement of the Superdome to be placed in the standard football configuration."[99]

The Stadium Agreement also states that SMG "hereby grants the [Saints] the exclusive use of the Superdome . . . on all Game Days,"[100] and that "[d]istribution and sale of tickets for admission to Home Games shall be under the sole direction and control of the [Saints]."[101] SMG contends that it cannot alter Plaintiff's tickets, because the Saints control where Plaintiff sits during Saints games.[102] Although SMG does not appear to have control over ticketing for Saints games, SMG is obligated to maintain the physical structure of the Superdome including spectator and

---

in particular over the configuration of the facilities, even temporarily, with regard to accessibility, that they can be said to 'operate' the stadium").

[96] Rec. Doc. 1 at 3.

[97] Rec. Doc. 31-5 at 24.

[98] *Id.*

[99] *Id.* at 26.

[100] *Id.* at 14.

[101] *Id.* at 26.

[102] Rec. Doc. 36 at 3.

other seating.[103] In the Complaint, Plaintiff alleges that an "overhang obstruct[s] the view of the video screens and aerial play, and the accessible seats [are] not high enough for him to see over standing patrons in the immediate rows in front."[104] Accepting as true the allegations in the Complaint, SMG could be held liable as an operator of the Superdome because SMG controls modification of the Superdome and could cause the Superdome to comply with the ADA.[105]

## B.    *Whether the Complaint was Timely Filed*

Second, SMG asserts that Plaintiff's claims are time-barred because Plaintiff did not file the Complaint within one year of when his claims accrued.[106] SMG asserts that Plaintiff's claims accrued when he became aware of Superdome renovations conducted in 2011 and 2016.[107] Plaintiff argues that his claims are not time-barred because he suffers from ongoing harm and was denied the "full and equal enjoyment" of the services, facilities, privileges, and accommodations offered at the Superdome each time he attended a Saints game in the year prior to this lawsuit.[108]

Because Congress did not establish a statute of limitations under the ADA, as a "general rule" courts apply "the most analogous period from state law."[109] The Fifth Circuit has found that discrimination claims under the ADA are analogous to personal-injury tort claims because they involve "injury to the individual rights of a person."[110] Furthermore, neither party disputes that

---

[103] Rec. Doc. 31-5 at 24.

[104] Rec. Doc. 1 at 6.

[105] *Neff*, 58 F.3d at 1067.

[106] Rec. Doc. 31-1 at 1.

[107] *Id.* at 4.

[108] Rec. Doc. 33 at 9–10.

[109] *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011) (citing *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995); *Wilson v. Garcia*, 471 U.S. 261, 266–67 (1985); 28 U.S.C. § 1652).

[110] *Id.* (applying Texas' statute of limitations for personal injury actions).

Louisiana's one-year statute of limitations for personal injury actions applies to this case.[111] Thus, Plaintiff's claims are time-barred if he filed them more than one year after the date they accrued.

Although state law determines the applicable limitations period, "the particular accrual date of a federal cause of action is a matter of federal law."[112] The starting point must be the statute's plain meaning.[113] The Fifth Circuit has explained that "[a]bsent unusual circumstances . . . the rule is that accrual occurs when a plaintiff has 'a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.'"[114] "In other words, accrual occurs 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'"[115]

In *Frame v. City of Arlington*, the Fifth Circuit determined that an injury under Title II of the ADA occurs "when a disabled individual has sufficient information to know that he has been denied the benefits of a service, program, or activity of a public entity."[116] There, the Fifth Circuit sitting *en banc*, reversed the district court's determination that the statute of limitations accrued on the date that the City finished building or altering an inaccessible sidewalk, holding instead that

---

[111] Rec. Doc. 31-1 at 8; Rec. Doc. 33 at 11.

[112] *Frame*, 657 F.3d at 238 (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008)).

[113] *Id.* at 224 (internal citations omitted); *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486 (5th Cir. 2013).

[114] *Id.* at 238 (quoting *Wallace*, 549 U.S. at 388).

[115] *Id.* (quoting *Epps*, 550 F.3d at 414).

[116] *Id.*

the plaintiffs' cause of action accrued when they knew or should have known they were being denied the benefits of the City's newly built or altered sidewalks.[117]

In *Frame*, the Fifth Circuit did not address whether claims under the ADA can continue to accrue until after the offending activity ceases, and it does not appear that the Fifth Circuit has addressed that issue in any subsequent case. However, at least three circuit courts have held that claims under the ADA continue to accrue until the offending activity ceases. In *Pickern v. Holiday Quality Foods, Inc.*, the Ninth Circuit stated that "[s]o long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury of the ADA continues."[118] Similarly, in *Scherr v. Marriott International, Inc.*, the Seventh Circuit held that the plaintiff's Title III claims were timely, because she was allegedly aware of continued ADA violations at the defendant's hotel even though she filed her suit nearly four years after she visited the noncompliant hotel.[119] The Seventh Circuit reasoned that "the statute itself makes clear that injunctive relief under Title III of the ADA . . . is available to 'any person who is being subjected to discrimination on the basis of disability' or who has 'reasonable grounds for believing that such person is about to be subjected to discrimination.'"[120] Accordingly, the Seventh Circuit determined that a continuing or a threatened violation of the ADA is an injury within the meaning of the Act.[121]

Recently, in *Hamer v. City of Trinidad*, the Tenth Circuit held that under the repeated violations doctrine a public entity violates Title II of the ADA each day that it fails to remedy a

---

[117] *Id.* at 221, 238.

[118] 293 F.3d 1133, 1137 (9th Cir. 2002).

[119] 703 F.3d 1069, 1075–76 (7th Cir. 2013) ("Because the violations Scherr alleges are continuing, the applicable statute of limitations does not bar her claim.").

[120] *Id.* at 1076 (quoting 42 U.S.C. § 12188(a)(1)).

[121] *Id.*

noncompliant service, program, or activity.[122] As a result, the Tenth Circuit found that "the applicable statute of limitations does not operate in its usual capacity as a firm bar to an untimely lawsuit. Instead, it constrains a plaintiff's right to relief to injuries sustained during the limitations period counting backwards from the day he or she files the lawsuit and injuries sustained while the lawsuit is pending."[123] The Tenth Circuit noted that the Fifth Circuit's decision in *Frame v. City of Arlington* did not bear on the issue of whether the repeated violations doctrine apples to ADA claims because that issue was not before the court in *Frame*.[124] The Tenth Circuit further noted that nothing in the Fifth Circuit's holding rejected or was inconsistent with the repeated violations doctrine.[125]

Following *Hamer*, a district judge in the Middle District of Louisiana found that Congress's use of the present tense in Title II of the ADA "suggests that a new claim accrued on each day the [defendant] failed to correct a non-compliant service, program, or activity."[126] Accordingly, the district court found that the plaintiff's claims were not time barred because the record reflected that the defendant subjected the plaintiff to discrimination within the limitations period.[127]

Similar to Title II, Title III uses the passive voice and the present tense. Title III of the ADA provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

---

[122] *Hamer v. City of Trinidad*, 924 F.3d 1093, 1103 (10th Cir. 2019).

[123] *Id.* at 1097.

[124] *Id.* at 1104, n.6.

[125] *Id.*

[126] *Guy v. LeBlanc*, No. 18-223, 2019 WL 4131093, at *4 (M.D. La. Aug. 29, 2019) (Jackson, J.) (citing *Hamer*, 924 F.3d at 1104).

[127] *Id.*

accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.[128]

Congress's use of the present tense suggests that a new claim accrued each time that SMG allegedly denied Plaintiff "the full and equal enjoyment" of a place of public accommodation.[129]

In the Complaint, Plaintiff alleges that he has been a Saints season ticket holder for over 30 years;[130] since 2011 his season tickets have been located in Section 109, Row 36, seats that offer a substantially limited view that is obstructed by multiple barriers;[131] he has visited the Superdome numerous times in the past, including during the 2017 Saints season;[132] and he planned to return to the Superdome in August 2018 for the 2018 Saints season.[133] Viewing the allegations in the Complaint in the light most favorable to Plaintiff, Plaintiff's claims for injunctive and declaratory relief appear to be timely because the Complaint was filed within one year of SMG allegedly denying Plaintiff "the full and equal enjoyment" of a place of public accommodation.

## C.    *Whether Plaintiff's Claim Concerning Future Renovations is Ripe for Judicial Review*

In the Complaint, Plaintiff requests that this Court issue judgment in his favor directing Defendants to ensure that the future planned renovations of the Superdome are ADA-complaint and cure the violations identified in the Complaint.[134] SMG argues that Plaintiff's claim

---

[128] 42 U.S.C. § 12182(a).

[129] *Id.*; *see also Hamer*, 924 F.3d at 1103.

[130] Rec. Doc. 1 at 4.

[131] *Id.* at 5.

[132] *Id.* at 17. Although the Court treats the instant motion as a motion to dismiss, the Court also notes that in the affidavit attached to the opposition to the instant motion, Plaintiff states that he visited the Superdome on nine occasions in the one year prior to filing suit where he was unable to fully see the field due to lack of a clear line of sight. Rec. Doc. 33-2 at 1.

[133] *Id.* at 16.

[134] Rec. Doc. 1 at 30.

concerning future renovations to the Superdome is not ripe for judicial review because it "rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."[135] SMG argues that any future renovations to the Superdome are speculative at this point as there are no concrete plans for future renovations and there is no evidence these speculative renovations would violate the ADA.[136] In opposition, Plaintiff asserts that he "has standing to sue to remove the existing barriers as an individual who is 'being subject to discrimination on the basis of disability,'" and he "has standing to sue to ensure that future modifications of the Superdome are made in accordance with the requirements of the ADA because he is someone who has 'reasonable grounds for believing' that he is 'about to be subjected to discrimination.'"[137]

Article III of the Constitution confines the federal courts to adjudicating actual "cases" and "controversies."[138] The Supreme Court has noted that "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction."[139] "The 'basic rationale [behind the ripeness doctrine] is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'"[140] "Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review."[141]

---

[135] Rec. Doc. 31-1 at 11 (citing *United States v. Carmichael*, 343 F.3d 756, 761 (5th Cir. 2003) (internal quotations omitted); *Arc of VA, Inc. v. Kaine*, Civil No. 3:09cv686, 2009 WL 4884533, at *4 (E.D. Va. Dec. 17, 2009)).

[136] *Id.* at 14.

[137] Rec. Doc. 33 at 17–18 (quoting 42 U.S.C. §12188(a)(1)).

[138] U.S. Const. art. III, § 2.

[139] *Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 57 n. 18 (1993) (citing *Buckley v. Valeo*, 424 U.S. 1, 114 (1976) (per curiam); *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 588 (1972)).

[140] *Roark & Hardee*, 522 F.3d 533, 544 (5th Cir. 2008) (alteration in original) (quoting *Abbott Lab. v. Gardner*, 387 U.S. 136, 148 (1967)).

[141] *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000) (citing *Abbott Lab.*, 387 U.S. at 136).

"Declaratory judgments are typically sought before a completed injury-in-fact has occurred, but still must be limited to the resolution of an actual controversy."[142] "The key considerations are the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required."[143]

As discussed above, Title III of the ADA provides that declaratory and injunctive relief is available to "any person who is being subjected to discrimination on the basis of disability" or who has "reasonable grounds for believing that such person is about to be subjected to discrimination."[144] According to Plaintiff, this provision makes his claim regarding future renovations ripe for review because "he is someone who has 'reasonable grounds for believing' that he is 'about to be subjected to discrimination.'"[145]

It does not appear that the Fifth Circuit has addressed how this provision effects the ripeness determination. However, the First Circuit has found that "[t]he statutory requirement that plaintiff must have reasonable grounds to believe she 'is about to be subjected to discrimination' does not, in our view, displace the normal background prudential standing [and ripeness] limitations."[146] In that case, the plaintiff, who used a wheelchair, sued a local hospital alleging that it was in violation of the architectural barrier provisions of Title III of the ADA.[147] The plaintiff asserted that she intended to become pregnant in the near future and sought an injunction to force

---

[142] *Id.* (internal quotation marks and citations omitted).

[143] *Id.* (internal quotation marks and citations omitted).

[144] 42 U.S.C. § 12188(a)(1).

[145] Rec. Doc. 33 at 17–18 (quoting 42 U.S.C. §12188(a)(1)).

[146] *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 69 (1st Cir. 2003).

[147] *Id.* at 66.

the hospital to move walls in its Family Center to make the bathrooms wheelchair-accessible.[148] The First Circuit determined that the plaintiff's claim was not ripe for judicial review because the threatened injury was "contingent on several events which may or may not happen."[149] Specifically, the First Circuit noted that the plaintiff may or may not become pregnant, and if she did become pregnant, there was no way of knowing whether the hospital would have Family Center facilities available to mothers in wheelchairs at that time.[150] Additionally, the First Circuit found that the plaintiff had not shown sufficient hardship to offset her weak showing of fitness.[151] Accordingly, the First Circuit affirmed the district court's decision dismissing the ADA claim without prejudice.[152]

Similarly, Plaintiff's claim regarding future renovations to the Superdome is contingent on several events which may or may not happen. Any future renovations to the Superdome are speculative at this point and there is no guarantee that future renovations would violate the ADA. Additionally, Plaintiff has not shown any hardship that would result from withholding court consideration of this claim at this time. Plaintiff may assert this claim if and when additional plans to renovate the Superdome are revealed that may violate the ADA. Accordingly, the Court finds Plaintiff's claim regarding future renovations is not ripe for judicial review and must be dismissed without prejudice.

---

[148] *Id.*

[149] *Id.* at 72.

[150] *Id.* at 72–73.

[151] *Id.* at 73.

[152] *Id.*

### D.    *Whether SMG is Entitled to Recovery of Attorneys' Fees*

Finally, SMG argues that it should be awarded attorneys' fees in this case because Plaintiff's claims based on past renovations are "clearly prescribed" and any claim premised on a future renovation is "clearly speculative."[153] Plaintiff argues that SMG is not entitled to attorneys' fees because he has presented a good-faith argument that SMG is an operator of the Superdome and that his claims are timely as an ongoing violation of the ADA.[154]

42 U.S.C. § 12205 "allows a court to award the defending party of an ADA action, 'reasonable attorney's fees, including litigation expenses and costs,' if the court finds the plaintiff's claim was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'"[155] SMG has prevailed in part on the instant motion, as the Court dismisses Plaintiff's claims regarding potential future renovations to the Superdome. However, as discussed above, the ripeness issue appears to be an open question within the Fifth Circuit. Accordingly, the Court finds that SMG is not entitled to attorneys' fees because Plaintiff's claim regarding future renovations is not completely frivolous, unreasonable, or without foundation.

### V. Conclusion

For the reasons discussed above, accepting as true the allegations in the Complaint, SMG could be held liable as an operator of the Superdome because SMG controls modification of the Superdome and could cause the Superdome to comply with the ADA. Additionally, viewing the allegations in the Complaint in the light most favorable to Plaintiff, Plaintiff's claims for injunctive and declaratory relief appear to be timely because the Complaint was filed within one year of SMG

---

[153] Rec. Doc. 31-1 at 5.

[154] Rec. Doc. 33 at 23–24.

[155] *Dutton v. Univ. Healthcare Sys., LLC*, 136 F. App'x 596, 604 (5th Cir. 2005) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)).

allegedly denying Plaintiff "the full and equal enjoyment" of a place of public accommodation. However, Plaintiff's claim regarding future renovations is not ripe for judicial review and must be dismissed without prejudice. Nevertheless, the Court finds that SMG is not entitled to attorneys' fees because Plaintiff's claim regarding future renovations is not completely frivolous, unreasonable, or without foundation.

Accordingly,

**IT IS HEREBY ORDERED** that SMG's "Motion for Judgment on the Pleadings or alternatively for Summary Judgment"[156] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** the motion is **GRANTED** to the extent that SMG seeks dismissal of Plaintiff's claim regarding potential future renovations to the Superdome. The claim regarding potential future renovations to the Superdome is **DISMISSED WITHOUT PREJUDICE.** The motion is **DENIED** in all other respects.

**NEW ORLEANS, LOUISIANA**, this 12th day of December, 2019.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[156] Rec. Doc. 31.