# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **SHELBY BAILEY** | **CIVIL ACTION** |
| **VERSUS** | **CASE NO. 18-5888** |
| **BOARD OF COMMISSIONERS OF THE LOUISIANA STADIUM AND EXPOSITION DISTRICT, ET AL.** | **SECTION: "G"(2)** |

## ORDER AND REASONS

Pending before the Court is Defendants, the Board of Commissioners of the Louisiana Stadium and Exposition District (the "Board") and Kyle France's, in his official capacity as Chairman of the Board ("France") (collectively "LSED Defendants"), "Motion for Summary Judgment on all of Plaintiff's Remaining Claims."[1] Plaintiff Shelby Bailey ("Plaintiff") filed a complaint alleging that the owners and operators of the Mercedes-Benz Superdome (the "Superdome"), failed to provide him with handicap accessible seating during New Orleans Saints (the "Saints") football games.[2] In the instant motion, the LSED Defendants argue that all of Plaintiff's claims should be dismissed because both the Board and France are entitled to sovereign immunity.[3] Considering Defendants' motion, the memoranda in support and opposition, the record, and the applicable law, the Court grants the motion in part and denies the motion in part.

## I. Background

On June 14, 2018, Plaintiff filed a Complaint in this Court naming as defendants SMG as the operator of the Superdome, the Board as the owner of the Superdome, and France in his official

---

[1] Rec. Doc. 94.

[2] Rec. Doc. 1.

[3] Rec. Doc. 94-1 at 1.

capacity as chairman of the Board.[4] Plaintiff brings claims against the Board and France for declaratory and injunctive relief pursuant to Title II of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act, 29 U.S.C. §794, *et seq.*[5] Plaintiff brings claims against SMG for declaratory and injunctive relief pursuant to Title III of the ADA.[6] Plaintiff also seeks recovery of attorneys' fees and costs.[7]

According to the Complaint, Plaintiff has a disability and relies on an electric wheelchair for mobility.[8] Plaintiff alleges that he has been a Saints season ticket holder for over 30 years.[9] Plaintiff alleges that prior to 2011, his seat was located on a wheelchair accessible raised platform in the 100 Level section of the Superdome.[10] Plaintiff alleges that in 2011, Defendants began extensive renovations on the Superdome and reconfigured the accessible seating section for patrons with disabilities.[11] Plaintiff alleges that as a result of the renovations, the wheelchair accessible seating at the Superdome was moved to other positions where the views are obstructed by barriers and other patrons or players standing during the game, or the seating is not fully accessible by wheelchair.[12]

Plaintiff alleges that Defendants have been on notice of ongoing accessibility issues for

---

[4] Rec. Doc. 1.

[5] *Id.* at 1–2.

[6] *Id.* at 2.

[7] *Id.*

[8] *Id.* at 4.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] *Id.* at 4–8.

many years.[13] According to the Complaint, in 2008 the United States Department of Justice conducted an inspection of the Superdome and issued a report detailing violations of ADA regulations.[14] Additionally, Plaintiff alleges that Defendants were sued by private litigants in 2018 regarding ongoing accessibility violations.[15]

As a result, Plaintiff alleges that Defendants have failed to comply with various parts of the ADA and Rehabilitation Act.[16] Plaintiff seeks compensatory and nominal damages along with declaratory and injunctive relief, and attorneys' fees.[17]

On December 13, 2019, the Court granted in part and denied in part Defendant SMG's Motion for Judgment on the Pleadings.[18] Accepting as true the allegations in the Complaint, the Court found that SMG could be held liable as an operator of the Superdome because SMG controls modification of the Superdome and could cause the Superdome to comply with the ADA.[19] Additionally, viewing the allegations in the Complaint in the light most favorable to Plaintiff, the Court found that Plaintiff's claims for injunctive and declaratory relief were timely because the Complaint was filed within one year of SMG allegedly denying Plaintiff "the full and equal enjoyment" of a place of public accommodation.[20] However, the Court found that Plaintiff's claim

---

[13] *Id.* at 10.

[14] *Id.*

[15] *Id.* at 10–11.

[16] *Id.* at 11–29.

[17] *Id.* at 1.

[18] Rec. Doc. 86.

[19] *Id.* at 24.

[20] *Id.* at 24–25.

regarding future renovations was not ripe for judicial review.[21] Accordingly, the Court granted the motion to the extent it sought dismissal of Plaintiff's claim regarding future renovations but denied the motion in all other respects.[22]

The LSED Defendants filed the instant motion on December 30, 2019.[23] Plaintiff filed an opposition on January 7, 2020.[24] The LSED Defendants, with leave of Court, filed a reply in further support of the motion on January 17, 2020.[25] Plaintiff, with leave of Court, filed a sur-reply to the motion on January 27, 2020.[26]

## II. Parties' Arguments

### A.    *The LSED Defendants' Arguments in Support of the Motion*

In the instant motion, the LSED Defendants argue that Plaintiff's ADA claims and Rehabilitation Act claims should be dismissed.[27] The LSED Defendants contend that Plaintiff's claim against them under Title II of the ADA should be dismissed because both the Board and France are entitled to sovereign immunity.[28] The LSED Defendants argue that the Rehabilitation

---

[21] *Id.* at 25.

[22] *Id.*

[23] Rec. Doc. 94.

[24] Rec. Doc. 103.

[25] Rec. Doc. 125. In opposition to the motion for leave to file reply memorandum, Plaintiff argued that the LSED Defendants raised new arguments in their reply brief – namely that France cannot be sued under the doctrine of *Ex parte Young* because he does not have enough power to effectuate relief. Rec. Doc. 117. This Court noted that while courts in the Fifth Circuit have determined that new arguments raised for the first time in a reply brief need not be considered, the Fifth Circuit has also found that courts "may rely on arguments and evidence presented for the first time in a reply brief as long as the court gives the nonmovant an adequate opportunity to respond." Rec. Doc. 124 (internal citations omitted). Accordingly, the Court ordered that the appropriate remedy to a defendant potentially improperly raising new arguments for the first time in a reply brief is for plaintiff to file a sur-reply. *Id.*

[26] Rec. Doc. 133.

[27] Rec. Doc. 94-1 at 1.

[28] *Id.*

4

Act claim should be dismissed because the Board is not a recipient of federal financial assistance, which LSED Defendants argue is required under the Rehabilitation Act.[29] Lastly, the LSED Defendants contend that all of Plaintiff's claims should be dismissed as untimely.[30]

### 1. LSED Defendants Assert they are Entitled to Sovereign Immunity

The LSED Defendants argue that Plaintiff's claim under Title II of the ADA fails for four reasons: (1) the Board is an arm of the State of Louisiana; (2) Plaintiff has failed to state a valid claim under Title II of the ADA; (3) Plaintiff cannot, as a matter of law, demonstrate that the alleged conduct of the Board violated the Fourteenth Amendment; and (4) Congress did not validly abrogate the states' sovereign immunity with respect to Plaintiff's claim when it passed Title II of the ADA.[31]

### a. The Board is an Arm of the State of Louisiana.

The LSED Defendants argue that the Fifth Circuit has developed a six-factor test for determining whether a state entity is entitled to Eleventh Amendment sovereign immunity, which includes:

1. Whether state statutes and case law view the agency as an arm of the state;
2. The source of the entity's funding;
3. The entity's degree of local autonomy;
4. Whether the entity is concerned with primarily local as opposed to statewide problems;
5. Whether the entity has the authority to sue and be sued in its own name; and
6. Whether the entity has the right to hold and use property.[32]

First, the LSED Defendants contend that constitutional and legislative pronouncements

---

[29] *Id.* at 1-2.

[30] *Id.* at 2.

[31] *Id.* at 6.

[32] *Id.* (citing *Hudson v. City of New Orleans*, 174 F.3d 677, 681 (5th Cir. 1999); *Clark v. Tarrant County*, 798 F.2d 736, 744 (5th Cir. 1986)).

show that the Board is a state agency within Louisiana's executive branch.[33] Second, the LSED Defendants argue that any judgment against the Board would be paid from the state treasury; therefore the second factor, which is the most important factor, is met.[34] Third, the LSED Defendants contend that the seven member Board is appointed by and serve entirely at the pleasure of the Governor of Louisiana, and therefore does not have any significant local autonomy.[35] Fourth, the LSED Defendants argue that while the Superdome is located in Orleans Parish, it was built for the benefit of all the people of the State of Louisiana, making its primary concern "statewide" in satisfaction of the fourth factor.[36] Finally, the LSED Defendants acknowledge that the Board has the authority to sue and be sued and does have the right to hold and use property, and therefore, does not satisfy the fifth and sixth factors.[37] In sum, the LSED Defendants argue that because four of the six factors weigh in favor of the Board, the Board is entitled to the protection of Eleventh Amendment sovereign immunity.[38]

### b. Congress did not Abrogate Sovereign Immunity Under Title II of the ADA as to Plaintiff's Claims.

Next, the LSED Defendants contend that sovereign immunity protects the Board from Plaintiff's claims unless Congress validly abrogated the state's immunity as to those claims.[39] The LSED Defendants argue that applying the three-part test from *U.S. v. Georgia* to this case

---

[33] *Id*. at 7.

[34] *Id*. at 8-9.

[35] *Id*. at 9.

[36] *Id*. at 9-10.

[37] *Id*. at 10.

[38] *Id*. at 10-11.

[39] *Id*. at 11.

demonstrates that the state's sovereign immunity was not abrogated.[40]

### i. Failure to Show A Violation of Title II of the ADA.

The LSED Defendants contend that to sustain a claim for damages under Title II of the ADA, a plaintiff is required to show intent.[41] The LSED Defendants argue that Plaintiff has not presented any evidence showing that the LSED Defendants intended to discriminate against him because of his disability in renovating the Superdome.[42]

### ii. Failure to Show A Violation of the Fourteenth Amendment.

The LSED Defendants contend that under the Equal Protection Clause, disabled persons are not a suspect class; therefore, any classifications on the basis of disability are subject to rational-basis scrutiny.[43] The LSED Defendants argue that the renovations to the Superdome bore a rational relationship to a legitimate governmental purpose, and therefore Plaintiff cannot show that the LSED Defendants violated the Fourteenth Amendment.[44]

### iii. Congress Did Not Validly Abrogate Sovereign Immunity as to the Conduct Involved Here.

The LSED Defendants contend that if the Court concludes that Plaintiff failed to carry his summary-judgment burden as to either of the first two elements of *Georgia* test, the Court need not reach the third element.[45] However, the LSED Defendants argue that if the Court reaches the third element, it should find that the Title II violations Plaintiff alleges neither implicate nor violate

---

[40] *Id.*.

[41] *Id.* at 12-13 (citing *Miraglia v. Bd. of Supervisors of the La. State Museum*, No. 17-30834, 2018 U.S. App. LEXIS 24037, at *13-14 (5th Cir. Aug. 24, 2018).

[42] *Id.* 94-1 at 13.

[43] *Id.* at 14 (citing *Douglas v. Gusman*, 567 F. Supp. 877, 886 (E.D. La. 2008) (Duval, J.)).

[44] *Id.* at 14-15.

[45] *Id.* at 15.

any right guaranteed by the Fourteenth Amendment.[46]

### 2. Compensatory Damages under the Rehabilitation Act and Titles II and III of the ADA

The LSED Defendants contend that in suits for money damages under the Rehabilitation Act and Titles II and III of the ADA, a plaintiff must prove that the defendant violated the ADA or Rehabilitation Act and that the discrimination was intentional.[47] The LSED Defendants assert that while Plaintiff argues that he need not show intent for a claim of disparate impact, the Fifth Circuit held to the contrary in *Miraglia*.[48] The LSED Defendants contend that Plaintiff presents no facts showing that the defendants acted with deliberate indifference and that therefore, Plaintiff is not entitled to receive compensatory damages.[49]

### 3. Plaintiff's Claims are Untimely

Lastly, the LSED Defendants contend that Plaintiff's claims are untimely and therefore barred because Plaintiff should have brought his claims within the one-year prescriptive period for tort claims.[50] The LSED Defendants argue that Plaintiff knew or should have known about the renovations to the Superdome in 2011 or 2016.[51]

### B. *Plaintiff's Arguments in Opposition to the Motion*

In opposition to the motion, Plaintiff first clarifies that he does not oppose the dismissal of

---

[46] *Id*. at 16.

[47] *Id*. at 17-18 (citing *Delano-Pyle v. Victoria Cty.*, 302 F.3d 567, 574 (5th Cir. 2002)).

[48] *Id*. at 18 (citing *Miraglia v. Bd. of Supervisors*, 901 F.3d 565, 574 (5th Cir. 2018)).

[49] *Id*. at 19-20.

[50] *Id*. at 20.

[51] *Id*. at 22-23.

his claim for damages under Title II of the ADA or the Rehabilitation Act.[52] However, Plaintiff argues that his claim for injunctive relief under Title II of the ADA against France should not be dismissed under the *Ex parte Young* doctrine.[53] Furthermore, Plaintiff contends that his claims are timely.[54]

First, Plaintiff argues that his ADA claim against France should be permitted to proceed under the doctrine of *Ex parte Young*.[55] Plaintiff contends that the *Ex parte Young* doctrine permits a plaintiff to seek prospective injunctive relief and attorneys' fees against a state official in his official capacity for violations of federal law.[56] Specifically, Plaintiff argues that in the Fifth Circuit, a state official can be sued for prospective relief in their official capacity under Title II of the ADA.[57] Furthermore, Plaintiff contends that "even where legislation invalidly abrogates a state's sovereign immunity, the *Ex parte Young* exception is still available to the plaintiff."[58] In sum, Plaintiff argues that the prospective relief he seeks against France is properly sought under the doctrine of *Ex parte Young*.[59]

Second, Plaintiff contends that his claims are timely because a new ADA claim accrues

---

[52] Rec. Doc. 103 at 1-2 (citing *Smith v. Bd. of Commissioners of Louisiana Stadium & Exposition Dist.*, 372 F. Supp. 3d 431 (E.D. La. 2019)).

[53] *Id.* at 1-2.

[54] *Id.* at 2.

[55] *Id.* at 3-5.

[56] *Id.* at 3 (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 291 (2d Cir. 2003); *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004)).

[57] *Id.* at 4 (citing *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 409-10 (5th Cir. 2004)).

[58] *Id.* at 4-5 (citing *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 n. 9 (2001); *Ysleta Del Sur Pueblo v. Laney*, 199 F.3d 281, 285–86 (5th Cir.2000), cert. denied, 529 U.S. 1131 (2000)).

[59] *Id.* at 5.

each time Plaintiff is denied full and equal enjoyment of the Superdome.[60] Plaintiff points to the Court's previous Order on this point and argues that this Court already determined that Plaintiff's claims were timely because they were filed within one year of SMG denying Plaintiff the full and equal enjoyment of a place of public accommodation.[61] Plaintiff contends that each time he goes to the Superdome for a Saints game, he encounters the same architectural barriers that leave him unable to fully see the field and prevent him from an equal opportunity to enjoy Saints games.[62] Therefore, Plaintiff argues that the Court should deny summary judgment because the Complaint was timely filed.[63]

## C.     The LSED Defendant's Arguments in Further Support of the Motion

In further support of the instant motion, the LSED Defendants argue that the *Ex parte Young* exception is inapplicable to this case.[64] The LSED Defendants contend that Plaintiff relies on cases involving either the heads of state agencies or voting boards wherein all members of the board were named as defendants.[65] The LSED Defendants argue that here, although France is the Chairman of the Board, he does not possess any overarching authority to unilaterally enact policies.[66] Rather, the LSED Defendants contend that in order to implement a new policy, including capital outlays, there must be a quorum of board members, and a majority must vote to

---

[60] *Id.* at 5-7.

[61] *Id.* at 5-6 (citing Rec. Doc. 86).

[62] *Id.* at 6.

[63] *Id.* at 7.

[64] Rec. Doc. 125 at 1.

[65] *Id.* at 1-2.

[66] *Id.* at 2 (citing 1921 La. Const. Art. XIV, § 47; Louisiana Revised Statute § 36:4(B)(1)(u)).

approve the measure; France as chairman is only one of the seven voting members.[67]

The LSED Defendants argue that in cases in which a plaintiff invokes *Ex parte Young*, the defendant state official must have some authority to enforce the law or an order for injunctive relief.[68] For example, the LSED Defendants contend that the United States Supreme Court in *Western Union Telegraph Co. v. Andrews* determined that the *Ex parte Young* doctrine requires a connection between the state official and the challenged statute.[69] The LSED Defendants argue that here, in order to act on any injunctive relief ordered by the Court, France would need a majority of the Board to adopt the measure and only France himself would be bound by the Court's order.[70]

The LSED Defendants contend that "the 5th Circuit stated that any probe into the existence of a *Young* exception should gauge '(1) the ability of the official to enforce the statute at issue under his statutory or constitutional powers, and (2) the demonstrated willingness of the official to enforce the statute.'"[71] The LSED Defendants argue that here, while France could be enjoined to vote for a capital outlay to remedy a potential ADA violation, Plaintiff's failure to include other board members means France would be powerless the enforce the measure.[72] The LSED Defendants contend that pursuant to *Lujan v. Defenders of Wildlife*, a plaintiff must show that his injury will be redressed by a favorable decision.[73] In sum, the LSED Defendants argue that "by failing to bring suit against all the members of the LSED Board [Plaintiff] has failed to sufficiently

---

[67] *Id*. at 2 (citing Louisiana Revised Statute § 42:13(A)(3)).

[68] *Id*. (citing *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001); *Lytle v. Griffith*, 240 F.3d 404, 412 (4th Cir. 2001)).

[69] *Id*. at 2-3 (citing *Western Union Telegraph Co. v. Andrews*, 216 U.S. 165 (1910)).

[70] *Id*. at 3.

[71] *Id*. at 4 (citing *Okpalobi*, 244 F.3d 405 at 417).

[72] *Id*.

[73] *Id*. at 5 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

name as defendants the persons who could grant him relief," because France does not control the remaining members of the Board and how they vote.[74] Therefore, the LSED Defendants contend that France enjoys Eleventh Amendment immunity and that the *Ex parte Young* exception is inapplicable here.[75]

### D.  *Plaintiff's Arguments in Further Opposition to the Motion*

In further opposition to the instant motion, Plaintiff contends the LSED Defendants argue that this Court should depart from the "straightforward inquiry" under the doctrine of *Ex parte Young* and instead adopt a standard, that the chairman of a board must be dismissed unless all board members are also joined as defendants, an argument has never been adopted by the United States Supreme Court or the Fifth Circuit.[76] Plaintiff contends that the Ninth Circuit recently rejected a similar argument.[77] Plaintiff argues that this Court should reject the LSED Defendants' argument and instead find that France has at least some enforcement connection with the challenged statute and is thus a proper defendant.[78]

Plaintiff contends that "[t]he Fifth Circuit has made it clear that a suit under *Ex parte Young* is properly directed at an official who has 'some enforcement connection with the challenged statute'" whereas "a suit against an official who does not have 'any duty or ability to do anything' is not proper under *Ex parte Young*."[79] Here, Plaintiff argues that France has a role, by casting a

---

[74] *Id.*

[75] *Id.* at 6.

[76] Rec. Doc. 133 at 1.

[77] *Id.* at 3 (citing *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1180-81 (9th Cir. 2012)).

[78] *Id.* at 1-2.

[79] *Id.* at 2 (citing *Okpalobi v. Foster*, 244 F.3d 405, 414, 427 (5th Cir. 2001)).

potential vote in favor of renovations, in ensuring that the Board brings the Superdome into compliance with the ADA.[80] Specifically, Plaintiff contends that in his role as Chairman of the Board, France can investigate problems, make proposals to the Board, and cast his vote in favor of renovations.[81] Furthermore, Plaintiff argues that the LSED Defendants' argument that the other Board members would vote "no" on renovations ordered by the Court is speculative.[82]

### III. Legal Standard

#### A.    Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[83] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[84] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[85] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists, and the moving party is entitled to judgment as a matter of law.[86] The nonmoving party may not rest upon the pleadings, but must identify specific facts in

---

[80] *Id.* at 3.

[81] *Id.* at 3-4.

[82] *Id.* at 4.

[83] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[84] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[85] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[86] *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[87]

    The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[88] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[89] To withstand a motion for summary judgment, the nonmoving party must show that there is a genuine issue for trial by presenting evidence of specific facts.[90] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[91] Rather, a factual dispute precludes a grant of summary judgment only if the evidence presented by the nonmovant is sufficient to permit a reasonable trier of fact to find for the nonmoving party.[92] Further, a court "resolve[s] factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[93] Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in

---

[87] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[88] *Celotex*, 477 U.S. at 323.

[89] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

[90] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1996)).

[91] *Little*, 37 F.3d at 1075.

[92] *Anderson*, 477 U.S. at 248.

[93] *Little*, 37 F.3d at 1075.

evidence at trial do not qualify as competent opposing evidence.[94] Ultimately, summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant."[95]

## B.    *ADA Compliance*

The Americans with Disabilities Act of 1990 ("ADA") "is a broad mandate of comprehensive character and sweeping purpose intended to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life."[96] "To effectuate its sweeping purpose, the ADA forbids discrimination against disabled individuals in major areas of public life, among them employment (Title I of the Act), public services (Title II), and public accommodations (Title III)."[97] Plaintiff brings claims against the Board and France under Title II of the ADA and the Rehabilitation Act.[98] Plaintiff brings claims against SMG under Title III of the ADA.[99]

"Title II of the ADA focuses on disability discrimination in the provision of public services."[100] Specifically, Title II provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services,

---

[94] Fed. R. Civ. P. 56(c)(2); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir. 1987).

[95] *Armstrong v. City of Dallas*, 997 F.2d 62 (5th Cir. 1993).

[96] *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011) (en banc) (citing *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001); *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 599 (1999) (internal quotation marks omitted)).

[97] *PGA Tour*, 532 U.S. at 675.

[98] Rec. Doc. 1 at 1–2.

[99] *Id.* at 2.

[100] *Frame*, 657 F.3d at 223.

programs, or activities of a public entity, or be subjected to discrimination by any such entity."[101]

A "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government."[102]

Similarly, "Section 504 of the Rehabilitation Act prohibits disability discrimination by recipients of federal funding."[103] Like Title II, Section 504 provides that no qualified individual with a disability "shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[104] "The ADA and the Rehabilitation Act generally are interpreted *in pari materia*."[105] "Indeed, Congress has instructed courts that "nothing in [the ADA] shall be construed to apply a lesser standard than the standards applied under title V [i.e., § 504] of the Rehabilitation Act . . . or the regulations issued by Federal agencies pursuant to such title.""[106]

"To show a violation of either statute, a plaintiff must prove "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of his disability."[107]

The United States Attorney General is authorized to promulgate regulations implementing

---

[101] 42 U.S.C. § 12132.

[102] *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000) (quoting 42 U.S.C. § 12131(1)(B)).

[103] *Frame*, 657 F.3d at 223.

[104] 29 U.S.C. § 794(a).

[105] *Frame*, 657 F.3d at 223 (citing *Kemp v. Holder*, 610 F.3d 231, 234–35 (5th Cir. 2010); *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 287–88, 289 n. 76 (5th Cir. 2005) (en banc)).

[106] *Id.* at 223–24 (quoting 42 U.S.C. § 12201(a); *Bragdon v. Abbott*, 524 U.S. 624, 632 (1998)).

[107] *Miraglia v. Bd. of Supervisors of Louisiana State Museum*, 901 F.3d 565, 574 (5th Cir. 2018) (quoting *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (per curiam)).

Title II.[108] The regulations provide that "no qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity."[109] A public entity must operate "each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities."[110] Therefore, Title II requires "program accessibility."[111]

"Recognizing that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion, Congress required the States to take reasonable measures to remove architectural and other barriers to accessibility."[112] However, a public entity is not "necessarily required . . . to make each of its existing facilities accessible to and usable by individuals with disabilities."[113] Instead, with respect to facilities built before 1992, Title II only requires "'reasonable modifications' that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service."[114]

"In the case of facilities built or altered after 1992, the regulations require compliance with

---

[108] 42 U.S.C. § 12134(a).

[109] 28 C.F.R. § 35.149.

[110] 28 C.F.R. § 35.150(a).

[111] *Tennessee v. Lane*, 541 U.S. 509, 531 (2004).

[112] *Id.* (citing 42 U.S.C. § 12131(2)).

[113] 28 C.F.R. § 35.150(a)(1).

[114] *Lane*, 541 U.S. at 531.

specific architectural accessibility standards,"[115] including the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG") set forth at 36 C.F.R. part 1191, appendices B and D. Pursuant to the regulations, "[e]ach facility or part of a facility altered by, on behalf of, or for the use of a public entity in a manner that affects or could affect the usability of the facility . . . shall, to the maximum extent feasible, be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities. . . ."[116]

## C.    *Eleventh Amendment Immunity and the Ex parte Young Exception*

The Supreme Court has interpreted the Eleventh Amendment to bar suits in federal court by private citizens against nonconsenting states.[117] This immunity extends to protect state officers acting in their official capacities, who, under the principle of state-sovereign immunity, are generally bared from suit.[118] However, the Supreme Court has recognized an exception to this rule under the *Ex parte Young* doctrine whereby "a federal court, consistent with the Eleventh Amendment, may enjoin state officials to conform their future conduct to the requirements of federal law."[119] A court undertaking an *Ex parte Young* analysis must conduct two inquires to determine whether the exception applies to the state officer in question. First, the court must conduct a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."[120] Next, the court must "also

---

[115] *Id.* (citing 28 CFR § 35.151).

[116] 28 C.F.R. § 35.151(b)(1).

[117] *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).

[118] *Edelman v. Jordan*, 415 U.S. 651, 663–69 (1974); *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 412 (5th Cir. 2004) (finding that "the principle of state-sovereign immunity generally precludes actions against state officers in their official capacities").

[119] *Quern v. Jordan*, 440 U.S. 332, 337 (1979).

[120] *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019) (quoting *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 645 (2002)).

decide whether the official in question has a 'sufficient connection [to] the enforcement' of the challenged act."[121]

## IV. Analysis

In the instant motion, the LSED Defendants argue that they are entitled to summary judgment because (1) both the Board and France are entitled to sovereign immunity and (2) the Complaint was not timely filed.[122] After Plaintiff argued in opposition that the ADA claim against France should be permitted to proceed under the doctrine of *Ex parte Young*, the LSED Defendants argued that the *Ex parte Young* exception is inapplicable to this case.[123] The Court will address each argument in turn.

### A.     *Whether the Board and France are Entitled to Sovereign Immunity*

The LSED Defendants contend that Plaintiff's claim against them under Title II of the ADA should be dismissed because both the Board and France are entitled to sovereign immunity.[124] The LSED Defendants argue that Plaintiff's Rehabilitation Act claim must also be dismissed because the Board is not a recipient of federal financial assistance, which the Board argues is required under the Rehabilitation Act.[125] In response, Plaintiff states that he does not oppose the dismissal of his claim for damages under Title II of the ADA or the Rehabilitation Act.[126] Plaintiff also does not contest the LSED Defendants' assertion that all claims against the

---

[121] *Id*. (quoting *Ex Parte Young*, 209 U.S. 123, 157 (1908) (citation omitted).

[122] Rec. Doc. 94-1 at 2.

[123] Rec. Doc. 125 at 1.

[124] Rec. Doc. 94-1 at 1.

[125] Rec. Doc. 94-1 at 1-2.

[126] Rec. Doc. 103 at 1-2 ("Based on Judge Morgan's holding in *Smith*, dismissal of Mr. Bailey's claim for injunctive relief under Title II of the Americans with Disabilities Act against Kyle France, in his official capacity, would be inappropriate under the doctrine of *Ex parte Young*. Also because of Judge Morgan's holding in Smith, Mr. Bailey does not oppose the dismissal of his claims for damages under Title II of the ADA or the Rehabilitation

Board must be dismissed because the Board is entitled to sovereign immunity.[127] Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[128] Here, Plaintiff does not oppose dismissal of his claims against the Board and his claim for damages against France. Therefore, those claims are dismissed with prejudice.[129]

## B.    Whether the *Ex Parte Young* Exception Applies

While Plaintiff does not oppose the dismissal of his claims against the Board or his claim for damages against France, Plaintiff argues that his claim against France for injunctive relief under Title II of the ADA should not be dismissed under the doctrine of *Ex parte Young*.[130] The LSED Defendants contend that the *Ex parte Young* exception is inapplicable here because France cannot, without approval of the other members of the Board, authorize renovations to the Superdome.[131]

The *Ex parte Young* exception only applies when the plaintiff names "individual state officials as defendants in their official capacities."[132] The Fifth Circuit has previously held that a suit against a state officer sued in their official capacity can proceed under Title II of the ADA.[133]

---

Act") (citing *Smith v. Bd. of Commissioners of Louisiana Stadium & Exposition Dist.*, 372 F. Supp. 3d 431 (E.D. La. 2019)).

[127] Rec. Doc. 103 at 7 ("LSED and France's motion for summary judgment should be denied as to Mr. Bailey's claims for injunctive relief under Title II of the ADA with respect to Kyle France because of *Ex parte Young*.").

[128] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[129] Rec. Doc. 103 at 1-2, 3.

[130] Rec. Doc. 103 at 1-2.

[131] Rec. Doc. 125 at 6.

[132] *Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013).

[133] *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 414 (5th Cir. 2004) ("We thus join the Second, Sixth, Seventh, Eighth, and Ninth Circuits in holding that Plaintiffs' *Ex parte Young* suit to enforce Title II can

As discussed above, a court undertaking an *Ex parte Young* analysis must conduct two inquires to determine whether the exception applies to the state officer in question. First, the court must conduct a "straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."[134] Next, the court must "also decide whether the official in question has a 'sufficient connection [to] the enforcement' of the challenged act."[135]

First, the Court considers "whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."[136] Here, the Complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective. Plaintiff alleges that France, in his official capacity as Chairman of the Board, is violating the ADA and seeks injunctive relief, including an order that France make the Superdome readily and fully accessible and useable to Plaintiff.[137] Plaintiff also seeks attorney's fees, which are not barred by the Eleventh Amendment if he ultimately obtains prospective injunctive relief.[138]

Next, the Court considers whether France has "some connection" to the enforcement of the disputed act.[139] Most of the Fifth Circuit cases addressing this standard arise in the context of a

---

proceed; Defendants have been sued in their official capacities and are therefore representing their respective state agencies (which are proper Title II defendants) for all purposes except the Eleventh Amendment.").

[134] *Paxton*, 943 F.3d at 998 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

[135] *Id*. (quoting *Young*, 209 U.S. at 157) (citation omitted).

[136] *Paxton*, 943 F.3d at 998 (quoting *Verizon Md., Inc.*, 535 U.S. at 645).

[137] Rec. Doc. 1 at 23.

[138] *Jones v. Texas Juvenile Justice Dept.*, 646 F. App'x 374, 377 n.15 (5th Cir. 2016) (citing *Warnock v. Pecos Cty., Tex.*, 88 F.3d 341, 343 (5th Cir. 1996)).

[139] *Young*, 209 U.S. at 157; *Okpalobi v. Foster*, 244 F.3d 405, 414, 427 (5th Cir. 2001) (quoting *Young*, 209 U.S. at 155-56) (holding that the *Ex parte Young* exception "only applies when the named defendant state officials have *some* connection with the enforcement of the act and 'threaten and are about to commence proceedings' to enforce the unconstitutional act.").

plaintiff seeking to enjoin a state official from enforcing an allegedly unconstitutional state statute.[140] The Fifth Circuit recently acknowledged that it has not been clear about what constitutes a sufficient connection to enforcement.[141] The Fifth Circuit noted that different panels of the court have adopted different definitions of "connection."[142] Under one definition, a plurality of the *en banc* court in *Okpalobi v. Foster* held that the state officer must have "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty."[143] Under this definition, the state official must be "specially charged with the duty to enforce" the allegedly unconstitutional state statute and "be threatening to exercise that duty."[144] The LSED Defendants point to *Okpalobi* and contend that in undertaking an *Ex parte Young* analysis, this Court "should gauge (1) the ability of the official to enforce the statute at issue under his statutory or constitutional powers, and (2) the demonstrated willingness of the official to enforce the statute."[145]

However, other panels have explicitly declined to follow the sovereign immunity analysis in *Okpalobi* "[b]ecause that part of the en banc opinion did not garner majority support, the

---

[140] *See Okpalobi*, 244 F.3d at 414; *Paxton*, 943 F.3d at 993; *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010).

[141] *Paxton*, 943 F.3d at 999 ("What constitutes a sufficient 'connection to [ ] enforcement' is not clear from our jurisprudence.").

[142] *Id.*; *see also Boudreaux v. La. State Bar Ass'n*, No. cv-19-11962, 2020 WL 137276 (E.D. La. Jan. 13, 2020) (noting that "panels in the Fifth Circuit are split as to whether the official must have 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty' or, rather, whether the state officer only must have some connection with the enforcement of the statute"); *K.P.*, 627 F.3d at 124 (characterizing the dispute as "whether *Ex Parte Young* requires only 'some connection' or a 'special relationship' between the state actor and the challenged statute.").

[143] *Okpalobi*, 244 F.3d at 414, 416.

[144] *Id.* at 414.

[145] *Id.* at 414, 427 (internal citations omitted).

Eleventh Amendment analysis is not binding precedent."[146] Still, the panel in *Morris v. Livingston* approvingly quoted the *Okpalobi* "connection" formulation as correct.[147] On the other hand, another panel has held that to satisfy the "connection" standard, a state officer need only have *some* connection with the enforcement of the statute.[148]

Most recently, in *City of Austin v. Paxton*, the Fifth Circuit declined to opine on which "connection to the enforcement" standard is correct.[149] However the *Paxton* Court did state that the "circuit's caselaw requires some scintilla of 'enforcement' by the relevant state official with respect to the challenged law."[150] This may involve "point[ing] to specific enforcement actions of the respective defendant state officials warranting the application of the *Young* exception."[151] Additionally, "[p]anels in this circuit have defined 'enforcement' as 'typically involv[ing] compulsion or constraint.'"[152]

The Court finds that France has the requisite connection with the challenged act to fall within the *Ex Parte Young* exception. The Board has final approval authority over all capital expenditures at the Superdome.[153] By virtue of that responsibility, the members of the Board,

---

[146] *K.P.*, 627 F.3d at 124 (citing *United States v. Ferguson*, 211 F.3d 878, 885 (5th Cir. 2000)).

[147] *Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (quoting *Okpalobi*, 244 F.3d at 416 (plurality)) ("The required 'connection' is not 'merely the general duty to see that the laws of the state are implemented,' but 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'").

[148] *See Air Evac EMS, Inc. v. Tex., Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 518 (5th Cir. 2017); *K.P.*, 627 F.3d at 120-25.

[149] *Paxton*, 943 F.3d at 1000 ("[I]n the same vein as panels before us, we find that we need not define the outer bounds of this circuit's *Ex parte Young* analysis today").

[150] *Id*. at 1002.

[151] *Id*. at 1001.

[152] *Id*. at 1001 (quoting *K.P.*, 627 F.3d at 124).

[153] Rec. Docs. 95-12 at 14, 85, 92-8 at 1, 5-6 (Pursuant to the Management Agreement, the Board retains exclusive control over approving, budgeting, and making funds available for the implementation of "building additions, alterations or improvements. . .").

including France, are delegated some enforcement authority to ensure that the Superdome complies with the requirements of the ADA. As stated above, the Fifth Circuit's "caselaw requires some scintilla of 'enforcement' by the relevant state official with respect to the challenged law."[154] France has at least some authority, as one of the seven voting members of the Board, to bring the Superdome into compliance with the ADA. The fact that France does not have unilateral authority to order renovations does not disrupt the "connection to the enforcement" standard articulated in *Paxton*. France has "some connection with the enforcement of the act" sufficient to fall within the *Ex Parte Young* exception.[155] Accordingly, summary judgment is inappropriate on this basis.

Next, the LSED Defendants make a similar and related argument that the "logic [of the LSED Defendants' *Ex parte Young* argument] is supported by the classic requirements of *Lujan v. Defenders of Wildlife*. . ."[156] The LSED Defendants contend that pursuant to *Lujan*, a plaintiff must show that his injury will be redressed by a favorable decision.[157] The LSED Defendants argue that "by failing to bring suit against all the members of the LSED Board [Plaintiff] has failed to sufficiently name as defendants the persons who could grant him relief," because France does not control the remaining members of the Board in terms of how they might vote on a proposal that could bring the Superdome into compliance with the ADA.[158]

The Fifth Circuit has recognized that there is "significant overlap" between Article III standing analysis and *Ex parte Young* analysis.[159] "In fact, it may be the case that an official's

---

[154] *Paxton*, 943 F.3d at 1002.

[155] *Young*, 209 U.S. at 157.

[156] Rec. Doc. 125 at 5 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)).

[157] *Id*.

[158] *Id*.

[159] *Air Evac*, 851 F.3d at 520.

'connection to [ ] enforcement' is satisfied when standing has been established."[160] In *Lujan v. Defenders of Wildlife*, the Supreme Court laid out the general requirements for plaintiffs to establish standing under Article III of the Constitution.[161] "[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[162]

Plaintiff attended nine Saints games in the year prior to filing this lawsuit and ten games since the case was filed. In his declaration, Plaintiff states that he intends to continue attending Saints games at the Superdome in the future, and he is "gravely concerned that [his] view of the game, jumbotron, and scoreboard will continue to be obstructed when [he] return[s].[163] Therefore, Plaintiff has standing to seek injunctive relief because: he has suffered an injury in fact that is concrete and particularized and actual or imminent; the injury is fairly traceable to the challenged action of France; and it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.[164] "[A] plaintiff satisfies the redressability requirement when he shows

[160] *Paxton*, 943 F.3d at 1002 (citing *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) ("[A]t the point that a threatened injury becomes sufficiently imminent and particularized to confer Article III standing, that threat of enforcement also becomes sufficient to satisfy [the connection to the enforcement] element of *Ex parte Young*.").

[161] *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

[162] *Friends of the Earth, Inc. v. Laidlaw Environ. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan*, 504 U.S. at 560–61).

[163] Rec. Doc. 95-4.

[164] *Friends of the Earth, Inc.*, 528 U.S. at 180–81.

that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his every injury."[165]

Specifically regarding the redressability requirement, Plaintiff has shown that a favorable decision as to France will likely relieve his injury. The Board has final approval authority over all capital expenditures at the Superdome.[166] While France cannot unilaterally authorize the capital expenditures that may bring the Superdome into compliance with the ADA, he holds one of the seven votes that could vote to effectuate those changes. In *K.P. v. LeBlanc*, the Fifth Circuit found that even though "the Board is far from the sole participant in the application of the challenged statute . . . the Board has definite responsibilities relating to the application [of the challenged statute]."[167] Those "definite responsibilities" including the Board's power to "start the process for considering a claim . . . or . . . refus[ing] to do so," led the Fifth Circuit to conclude that the members of the board in *K.P.* could favorably redress the plaintiffs' injury and therefore find that plaintiffs had standing.[168] The Court finds the factual scenario in *K.P.* analogous to the facts here. While France is not the sole participant in the application of the challenged statute, he has definite responsibilities relating to the application of the challenged statute. Therefore, France can favorably redress Plaintiff's injury.

In *Okpalobi*, the Fifth Circuit concluded that the plaintiffs failed to satisfy the "redressability" requirement of *Lujan* because the named state officers, the governor and the attorney general, "have no power to redress the asserted injuries" and in fact, did not have "any

---

[165] *Larson v. Valente*, 456 U.S. 228, 243 n. 15 (1982).

[166] Rec. Docs. 95-12 at 14, 85, 92-8 at 1, 5-6 (Pursuant to the Management Agreement, the Board retains exclusive control over approving, budgeting, and making funds available for the implementation of "building additions, alterations or improvements. . .").

[167] *K.P.*, 627 F.3d at 123-24.

[168] *Id.*

duty or ability to do *anything*" relating to enforcement of the statute.[169] Here the Court cannot say

that France has "no powers to redress the injuries alleged."[170] While France cannot unilaterally

authorize renovations to bring the Superdome into compliance with the ADA, he holds one of

seven votes that could vote to effectuate those changes. Therefore, Plaintiff has standing to seek

relief from France.

## C.  *Whether Plaintiff's Claims are untimely*

The LSED Defendants contend that Plaintiff's claims are untimely barred because Plaintiff

should have brought his claims within the one-year prescriptive period for tort claims.[171] The

LSED Defendants argue that Plaintiff knew or should have known about the renovations in 2011

or 2016, yet waited until June 14, 2018 to file his Complaint.[172] In response, Plaintiff contends that

his claims are timely because a new ADA claim accrues each time Plaintiff is denied full and equal

enjoyment of the Superdome.[173]

Because Congress did not establish a statute of limitations under the ADA, as a "general

rule" courts apply "the most analogous period from state law."[174] The Fifth Circuit has found that

discrimination claims under the ADA are analogous to personal-injury tort claims because they

involve "injury to the individual rights of a person."[175] Furthermore, neither party disputes that

---

[169] *Okpalobi*, 244 F.3d at 426-27.

[170] *Id*. at 427.

[171] Rec. Doc. 94-1 at 20.

[172] *Id*. at 20-23.

[173] Rec. Doc. 103 at 5-7.

[174] *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011) (citing *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995); *Wilson v. Garcia*, 471 U.S. 261, 266–67 (1985); 28 U.S.C. § 1652).

[175] *Id.* (applying Texas' statute of limitations for personal injury actions).

Louisiana's one-year statute of limitations for personal injury actions applies to this case.[176] Thus, Plaintiff's claims are time-barred if he filed them more than one year after the date they accrued.

Although state law determines the applicable limitations period, "the particular accrual date of a federal cause of action is a matter of federal law."[177] The starting point must be the statute's plain meaning.[178] The Fifth Circuit has explained that "[a]bsent unusual circumstances . . . the rule is that accrual occurs when a plaintiff has 'a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.'"[179] "In other words, accrual occurs 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'"[180]

In *Frame v. City of Arlington*, the Fifth Circuit determined that an injury under Title II of the ADA occurs "when a disabled individual has sufficient information to know that he has been denied the benefits of a service, program, or activity of a public entity."[181] There, the Fifth Circuit sitting *en banc*, reversed the district court's determination that the statute of limitations accrued on the date that the City finished building or altering an inaccessible sidewalk, holding instead that the plaintiffs' cause of action accrued when they knew or should have known they were being denied the benefits of the City's newly built or altered sidewalks.[182]

---

[176] Rec. Doc. 31-1 at 8; Rec. Doc. 33 at 11.

[177] *Frame*, 657 F.3d at 238 (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007); *Walker v. Epps*, 550 F.3d 407, 414 (5th Cir. 2008)).

[178] *Id.* at 224 (internal citations omitted); *Trout Point Lodge, Ltd. v. Handshoe*, 729 F.3d 481, 486 (5th Cir. 2013).

[179] *Id.* at 238 (quoting *Wallace*, 549 U.S. at 388).

[180] *Id.* (quoting *Epps*, 550 F.3d at 414).

[181] *Id.*

[182] *Id.* at 221, 238.

In *Frame*, the Fifth Circuit did not address whether claims under the ADA can continue to accrue until after the offending activity ceases, and it does not appear that the Fifth Circuit has addressed that issue in any subsequent case. However, at least three circuit courts have held that claims under the ADA continue to accrue until the offending activity ceases. In *Pickern v. Holiday Quality Foods, Inc.*, the Ninth Circuit stated that "[s]o long as the discriminatory conditions continue, and so long as a plaintiff is aware of them and remains deterred, the injury of the ADA continues."[183] Similarly, in *Scherr v. Marriott International, Inc.*, the Seventh Circuit held that the plaintiff's Title III claims were timely, because she was allegedly aware of continued ADA violations at the defendant's hotel even though she filed her suit nearly four years after she visited the noncompliant hotel.[184] The Seventh Circuit reasoned that "the statute itself makes clear that injunctive relief under Title III of the ADA . . . is available to 'any person who is being subjected to discrimination on the basis of disability' or who has 'reasonable grounds for believing that such person is about to be subjected to discrimination.'"[185] Accordingly, the Seventh Circuit determined that a continuing or a threatened violation of the ADA is an injury within the meaning of the Act.[186]

Recently, in *Hamer v. City of Trinidad*, the Tenth Circuit held that under the repeated violations doctrine a public entity violates Title II of the ADA each day that it fails to remedy a noncompliant service, program, or activity.[187] As a result, the Tenth Circuit found that "the applicable statute of limitations does not operate in its usual capacity as a firm bar to an untimely

---

[183] 293 F.3d 1133, 1137 (9th Cir. 2002).

[184] 703 F.3d 1069, 1075–76 (7th Cir. 2013) ("Because the violations Scherr alleges are continuing, the applicable statute of limitations does not bar her claim.").

[185] *Id.* at 1076 (quoting 42 U.S.C. § 12188(a)(1)).

[186] *Id.*

[187] *Hamer v. City of Trinidad*, 924 F.3d 1093, 1103 (10th Cir. 2019).

lawsuit. Instead, it constrains a plaintiff's right to relief to injuries sustained during the limitations period counting backwards from the day he or she files the lawsuit and injuries sustained while the lawsuit is pending."[188] The Tenth Circuit noted that the Fifth Circuit's decision in *Frame v. City of Arlington* did not bear on the issue of whether the repeated violations doctrine apples to ADA claims because that issue was not before the court in *Frame*.[189] The Tenth Circuit further noted that nothing in the Fifth Circuit's holding rejected or was inconsistent with the repeated violations doctrine.[190]

Following *Hamer*, a district judge in the Middle District of Louisiana found that Congress's use of the present tense in Title II of the ADA "suggests that a new claim accrued on each day the [defendant] failed to correct a non-compliant service, program, or activity."[191] Accordingly, the district court found that the plaintiff's claims were not time barred because the record reflected that the defendant subjected the plaintiff to discrimination within the limitations period.[192]

Plaintiff alleges that the 2010 renovations violated the alteration requirements of the ADA in six ways. Plaintiff alleges that he has been a Saints season ticket holder for over 30 years;[193] since 2011 his season tickets have been located in Section 109, Row 36, seats that offer a substantially limited view that is obstructed by multiple barriers;[194] he has visited the Superdome

---

[188] *Id.* at 1097.

[189] *Id.* at 1104, n.6.

[190] *Id.*

[191] *Guy v. LeBlanc*, No. 18-223, 2019 WL 4131093, at *4 (M.D. La. Aug. 29, 2019) (Jackson, J.) (citing *Hamer*, 924 F.3d at 1104).

[192] *Id.*

[193] Rec. Doc. 1 at 4.

[194] *Id.* at 5.

numerous times in the past, including during the 2017 Saints season;[195] and he planned to return

to the Superdome in August 2018 for the 2018 Saints season.[196] During his deposition, Plaintiff

stated that he continued to experience the sight line issues, due to standing patrons and the concrete

overhang, each time he entered the Superdome since 2011.[197]

Title II mandates that "no qualified individual with a disability shall, by reason of such

disability, be excluded from participation in or be denied the benefits of the services, programs, or

activities of a public entity, or be subjected to discrimination by any such entity."[198] Congress's

use of the present tense suggests that a new claim accrued on each day the defendants failed to

correct a non-compliant service, program, or activity.[199] Plaintiff filed suit within one year of

allegedly being denied the benefit of a service, program, or activity that was "readily accessible to

and usable by individuals with disabilities."[200] Therefore, the claims are timely. Accordingly,

France is not entitled to summary judgment on this issue.

## V. Conclusion

For the reasons discussed above, the LSED Defendants' motion for summary judgment is

granted in part and denied in part. The motion is granted to the extent that the LSED Defendants

seek dismissal of Plaintiff's claims for damages under Title II of the ADA or the Rehabilitation

Act. While Plaintiff's claim against the Board and his claim for damages against France is

dismissed with prejudice, Plaintiff's claim against France for injunctive relief under Title II of the

---

[195] *Id.* at 17.

[196] *Id.* at 16.

[197] Rec. Doc. 95-11 at 20–21.

[198] *See* 42 U.S.C. § 12132.

[199] *See Hamer*, 924 F.3d at 1104.

[200] 28 C.F.R. § 35.150(a).

ADA may proceed under the doctrine of *Ex parte Young*. Lastly, Plaintiff's claims are not time barred.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants, the Board and France's "Motion for Summary Judgment on all of Plaintiff's Remaining Claims"[201] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the motion is **GRANTED** to the extent that Defendants seek dismissal of Plaintiff's claims for damages under Title II of the ADA or the Rehabilitation Act. Any claims for damages under Title II of the ADA or the Rehabilitation Act is **DISMISSED WITH PREJUDICE.** The motion is **DENIED** in all other respects.

**NEW ORLEANS, LOUISIANA,** this __21st__ day of February, 2020.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[201] Rec. Doc. 94.